514 So.2d 524 (1987)
Edward G. NOVAK and Essie H. Novak, Plaintiffs-Appellants,
v.
TEXADA, MILLER, MASTERSON AND DAVIS CLINIC, et al., Defendants-Appellees.
No. 86-807.
Court of Appeal of Louisiana, Third Circuit.
September 16, 1987.
Writ Denied November 20, 1987.
*525 Sumpter B. Davis, III, Baton Rouge, for plaintiffs-appellants.
Provosty, Sadler & Delaunay, Frederick B. Alexius and Stephen D. Wheelis, Alexandria, for defendants-appellees.
Before STOKER, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Edward V. Novak and his wife, Essie Novak (hereafter the Novaks), appeal a jury verdict dismissing their medical malpractice claim against Dr. Thomas W. Davis, his medical assistant, Lucille Boudreaux (hereafter Mrs. Boudreaux), Texada, Miller, Masterson & Davis Clinic (hereafter Texada Clinic), the medical association which hired Mrs. Boudreaux, and their insurer, St. Paul Fire & Marine Insurance Company. The jury concluded that Mrs. Novak's pain in her left arm and subsequent restricted movement of that arm was not the result of a flu shot Mrs. Boudreaux administered at the clinic. The Novaks contend: (1) the jury verdict is contrary to the law and evidence; (2) the trial court erred in failing to instruct the jury on the doctrine of res ipsa loquitur; and (3) the trial court erred in failing to instruct the jury on the doctrine of informed consent. We affirm.

FACTS
On December 6, 1976, Mr. and Mrs. Novak went to the Texada Clinic in Alexandria where Mrs. Boudreaux, Dr. Davis' medical assistant, injected the flu shot into Mrs. Novak's left arm. Mrs. Novak's arm became uncomfortable and by bedtime she could not raise it. After several local physicians, including Dr. Davis, were unable to relieve her arm pain, Mrs. Novak saw Dr. Baltazar Ramos, a neurologist in Texas on October 23, 1977. After examination and testing, Dr. Ramos opined that Mrs. Novak's complaints were caused by the needle from the injection of the flu shot striking the axillary nerve in her left arm, denervating the deltoid muscle.
The Novaks convoked a medical review panel, alleging that the flu shot was improperly administered by an unlicensed, untrained individual, with a needle that was too long. The Novaks also invoked the doctrines of res ipsa loquitur and lack of informed consent. The medical review panel found no liability on the part of any of the defendants. Subsequently the Novaks commenced this civil malpractice action which resulted in a judgment adverse to them.

MANIFEST ERROR
The Novaks contend that the jury verdict is contrary to the evidence.
It is well settled that an appellate court must give great weight to the conclusions reached by the trier of fact and, if there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed unless manifestly erroneous. Anthony v. Hospital Service Dist. No. 1, 477 So.2d 1180 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986); Senegal v. George Theriot's, Inc., 445 So.2d 137 (La.App. 3rd *526 Cir.1984), writ denied, 448 So.2d 114 (La. 1984).
The Novaks contend that there is inconsistency between the evidence and the jury's findings. The length of the needle used by Mrs. Boudreaux in administering the inoculation was contested. The Novaks and Rev. Claude Weatherford, Mrs. Novak's brother-in-law, who also received a flu shot from Mrs. Boudreaux on the same day in question, testified that the needle used for the injection was more than an inch long. Mrs. Boudreaux testified that although the clinic used two types of syringes in 1976 to give flu shots, each used a needle that was 5/8 inch long. She further differentiated the longer needles from the shorter flu shot needles, identified the hip area as the place where the longer needles would be used and stated that the one and one-half inch needle "is definitely not the size needle that you would use to give an intramuscular shot in the arm." Dr. Davis corroborated Mrs. Boudreaux's testimony, testifying that the flu shot needles were kept separate and that the nurses in the Texada Clinic did not use the longer needles for flu shots. Mrs. Novak further contended that Mrs. Boudreaux improperly gave the injection in the posterior area of the deltoid muscle. Mrs. Boudreaux denied this allegation and testified that her training taught her where to properly give the injection. The jury listened to all the witnesses who testified and concluded that a 5/8 inch needle was used and that the injection was made in the proper location. After completely reviewing the record we cannot say that the jury was manifestly erroneous in its conclusions regarding these questions of fact.
The Novaks next contend that in 1976 it was improper for an unlicensed nurse to give inoculations. It was uncontested that Mrs. Boudreaux was neither a licensed practical nurse nor a registered nurse.
Nurses and other health care providers are subject to the same standard as physicians. It is a nurse's duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of the nursing or health care profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his or her best judgment, in the application of his or her skill to the case. Norton v. Argonaut Insurance Company, 144 So.2d 249 (La.App. 1st Cir. 1962). Analogously we conclude that the same standard is applicable to unlicensed office assistants who are trained by physicians to administer injections. See Butler v. Louisiana State Board of Education, 331 So.2d 192 (La.App. 3rd Cir.1976), writ denied, 334 So.2d 230 (La.1976) (where a professor of biology who undertakes a project which included the performance of a medical function, i.e., the drawing of blood, was held to the standard of a medical technician); and Favalora v. Aetna Casualty & Surety Company, 144 So.2d 544 (La.App. 1st Cir.1962) (where the standard applicable to physicians was extended to practitioners engaged in all kindred and related branches and fields of the medical profession).
Mrs. Novak contends that it was negligence per se for an unlicensed individual to administer her a flu shot. The record shows that in 1976 unlicensed office assistants were trained to give injections in Alexandria. The record further preponderates that Mrs. Boudreaux was trained on the job at the Texada Clinic as well as at her places of previous employment to give injections and she was never disciplined for improper injection technique. The physicians who testified stated that as of the time of trial they continued to use unlicensed medical assistants to administer routine shots. Considering the entirety of the evidence we find no merit to Mrs. Novak's contention.
Finally, the Novaks contend that it was implausible for the jury to find Mrs. Novak suffered an injury from a flu shot without finding that the defendants were negligent in administering the inoculation. In opposition defendants' experts testified that Mrs. Novak's injury was the result of an allergic reaction to the flu serum and that if a 5/8 inch needle was used, it was impossible to strike the axillary nerve as Mrs. Novak conjectured. Again, after considering the *527 evidence, the jury resolved this factual determination against the Novaks. After carefully reviewing the record, we are unable to state that the jury was clearly wrong.

RES IPSA LOQUITUR
The Novaks argue that the trial judge committed reversible error in refusing to charge the jury that the proof of the occurrence of an untoward event (Mrs. Novak's nerve injury) during inoculation created a presumption of negligence which defendants had to rebut. In a convoluted argument based on Gage v. St. Paul Fire & Marine Insurance Company, 282 So.2d 147 (La.App. 3rd Cir.1973), writ denied, 284 So.2d 602 (La.1973), they contend that their proposed jury instruction was not a res ipsa loquitur instruction but then conclude that the trial court should have given a "res ipsa-untoward event" jury charge. We disagree. For the reasons stated in Rogers v. Brown, 416 So.2d 624 (La.App. 2nd Cir.1982), writ denied, 422 So.2d 153 (La.1982), which discerned no distinction between the doctrine of res ipsa loquitur and untoward event, we will treat plaintiffs' contention as a complaint of the trial court failing to give an instruction on the doctrine of res ipsa loquitur.
Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2nd. Cir.1984), explained res ipsa loquitur as follows:
"Res ipsa loquitur is not a substantive legal tenet, but rather an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence. Smith v. International Paper Co., 299 So.2d 437 (La.App. 2d Cir.1974), writ denied, 302 So.2d 310 (La.1974). This evidentiary doctrine is applicable where defendant has actual control of the agency, instrumentality or conditions which caused plaintiff's injuries; the evidence as to the true cause of plaintiff's loss is more readily accessible to defendant than plaintiff; and the accident is of a kind that does not occur in the absence of negligence and/or the circumstances attending the accident create an inference of negligence on the part of defendant. Langlinais v. Geophysical Service, Inc., 111 So.2d 781 (La.1959); Northwestern Mutual Fire Ass'n v. Allain, 226 La. 788, 77 So.2d 395 (1954); Dorman v. T. Smith & Son, 223 La. 29, 64 So.2d 833 (1953); Ray v. Ameri-Care Hospital, 400 So.2d 1127 (La.App. 1st Cir.1981), writ denied, 404 So.2d 277 (La.1981). Under the principle of res ipsa loquitur, the defendant's negligence is inferred because, under the facts shown, the inference that defendant's negligence caused plaintiff's harm is probable and more plausible than any other explanation propounded. See Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972). It is crucial to note that, where the doctrine of res ipsa loquitur is properly applicable, the plaintiff need not establish the exact manner in which he was injured, or the precise act or event which precipitated his injury. Boudreaux, supra." (Emphasis added.)
Furthermore, it is well settled that res ipsa is a rule of circumstantial evidence and is inapplicable when facts and direct evidence are available to explain the activity leading to the injury. Accordingly, the doctrine should apply only when the facts indicate the most plausible explanation for the plaintiff's injury is the negligence of the defendant and when there is no direct evidence to explain the injury. White v. McCool, 395 So.2d 774 (La.1981).
Considering the record as presented to the jury, we cannot say the trial judge erred in not propounding an instruction on res ipsa loquitur. Any negligence on defendants' part would have occurred during the injection, an event which Mrs. Novak and two others gave direct testimony. Furthermore the medical evidence presented to the jury established that injuries of this nature may occur without negligence. This is not the type of accident that "does not occur in the absence of negligence." Therefore we conclude that there is no merit to this contention.

INFORMED CONSENT
The Novaks argue that the trial judge should have instructed the jury regarding *528 informed consent since Dr. Davis did not make known the risks that may occur as the result of a flu shot.
LSA-R.S. 40:1299.40 provides:
"A. Notwithstanding any other law to the contrary, written consent to medical treatment means a consent in writing to any medical or surgical procedure or course of procedures which (a) sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures, (b) acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner, and (c) is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
B. Except as provided in Subsection A of this Section, no evidence shall be admissible to modify or limit the authorization for performance of the procedure or procedures set forth in such written consent.
C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set for in Paragraph (a) of Subsection A above, and an opportunity shall be afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases."
The trial court found that a flu injection was not within the scope of R.S. 40:1299.40 and that Dr. Davis was not required to obtain Mrs. Novak's written consent before administering the injection. Defendants contend that administering a flu shot is a routine procedure which does not require a formal written consent.
Courts will not impute meanings which lead to absurd results or extend statutes to situations the legislature never intended should be covered. Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (1946).
Although the legislature provided no guidance for determining what constitutes a "medical or surgical procedure", we find no abuse of discretion in the trial court's conclusion that it did not extend to a routine flu injection. To hold otherwise would lead to results in the day-to-day practice of medicine never intended by the legislature.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Novaks.
AFFIRMED.