FORET, Judge.
This appeal arises out of a medical malpractice suit filed by Patsy Ruth Daniels against the State of Louisiana, through the Department of Health & Human Resources (DHHR). The trial court rendered judgment in favor of DHHR, dismissing all claims asserted by Ms. Daniels and she has appealed.
On August 12, 1983, Patsy Ruth Daniels fell and injured her right wrist in her home and was taken to Merryville General Hospital where she was examined by Dr. Wilson D. Morris. Dr. Morris ordered x-rays which revealed a closed comminuted fracture of the wrist or what is known in the medical profession as a colles fracture. Dr. Morris placed the arm in a Volar splint and instructed Ms. Daniels to seek further medical treatment at University Medical Center in Lafayette because of her lack of financial means. Ms. Daniels was seen in the emergency room at University Medical Center by Dr. Sidney St.Amant. According to the medical records introduced into evidence at trial, Dr. St.Amant ordered routine lab work, reviewed the x-rays taken at Merryville General Hospital, and consulted with Dr. Michael Schutte, an orthopedic specialist, concerning his examination findings. Dr. StAmant confirmed Dr. Morris’ diagnosis of a colles fracture. Based upon his examination findings and consultation with Dr. Schutte, Dr. StAmant elected to keep the arm in a Volar splint until August 15, 1983, on which date Ms. Daniels was instructed to see Dr. Schutte for further treatment after the swelling was reduced. Ms. Daniels returned to see Dr. Schutte on the 15th of August [1]. After examining Ms. Daniels, he ordered additional x-rays. Dr. Schutte found her neurovascular status in the right hand to be intact, which means *220 the nerves were functioning and blood circulation was not compromised. After reviewing the x-rays, Dr. Schutte agreed that Ms. Daniels had sustained a colles fracture of the right distal radius. He found that the distal radius was impacted with some dorsal displacement. Considering this, he placed Ms. Daniels in a current coaptation splint in order to immobilize the wrist and elbow. He chose to accept the position of the fracture and consequently did not reduce (realign the bones in their anatomical position) the fracture before applying the cast. Ms. Daniels was told to return to Dr. Schutte in six weeks, but she did not do so. Instead, she chose to seek further treatment at Moss Regional Hospital in Lake Charles, where her cast was removed. All told, Ms. Daniels was seen by the physicians at Moss Regional on four occasions during the one-year period following the date the cast was removed. Ms. Daniels’ right wrist is now deformed and, as of the date of trial, she was still experiencing pain and discomfort. She states that she has been rendered unable to perform normal household chores without assistance and has difficulty dressing, bathing, and attending to some of her other personal needs. According to Dr. Wilson Morris, she has a 30% disability of the right forearm.
On appeal, Ms. Daniels urges several assignments of error, to-wit:
1. The trial court erred in concluding that Dr. Schutte accepted the position that the fracture was in and chose to immobilize it in that position.
2. The medical personnel and treating physicians at University Medical Center had a legal duty to disclose to Ms. Daniels the treatment to be performed prior to administering same.
3. The physicians who saw and examined Ms. Daniels after the accident are in the best position to determine the proper treatment in this case and hence the greater weight given to the opinion of Dr. McDaniel by the trial court was improper.
4. The trial court erred in finding that Dr. Schutte was not negligent in failing to obtain adequate medical history from Ms. Daniels.
5.The trial court erred in giving substantial weight to the testimony of Dr. James McDaniel.
For purposes of this appeal, we shall address these assignments of error singularly.
I
THE TRIAL COURT ERRED IN CONCLUDING THAT DR. SCHUTTE ACCEPTED THE POSITION THAT THE FRACTURE WAS IN AND CHOSE TO IMMOBILIZE IT IN THAT POSITION.
The trial court made a specific finding of fact that Dr. Schutte chose to accept the position of the fracture rather than resetting it. Although Dr. Schutte had no independent recollection of his thought process on the date he treated Ms. Daniels, the medical records introduced into evidence clearly reveal his examination findings as well as the treatment prescribed. Additionally, Dr. Schutte and Dr. James McDaniel, who is also an orthopedic specialist, testified that the treatment administered by Dr. Schutte (accepting the alignment of the fracture without resetting prior to casting) is an accepted method of treating a colies fracture. Dr. Schutte further testified that, although he did not have independent recall as to the treatment prescribed, he is certain that he did not simply forget to reduce the fracture prior to casting the arm, and this is corroborated by the fact that his notes do not indicate that the fracture was to be reduced prior to casting. Considering this, we feel that the trial court did not commit manifest error in finding that Dr. Schutte did, in fact, make a conscious decision to accept the fracture in the position it was in prior to casting. In fact, a careful review of the record reveals no evidence indicating that Dr. Schutte intended to set the fracture but simply failed to do so.
II
THE MEDICAL PERSONNEL AND TREATING PHYSICIANS AT UNIVERSITY MEDICAL CENTER HAD A LE *221 GAL DUTY TO DISCLOSE TO MS. DANIELS THE TREATMENT TO BE PERFORMED PRIOR TO ADMINISTERING SAME.
At trial, Ms. Daniels testified that neither Dr. Schutte nor the medical assistant who applied the cast informed her of the nature of the treatment to be performed. Apparently, Ms. Daniels is contending that the failure to do so is a violation of La.R.S. 40:1299.40, commonly referred to as the informed consent statute. We find this contention to be without merit. La.R.S. 40:1299.40 is as follows:
“§ 1299.40. Consent to medical treatment
A. Notwithstanding any other law to the contrary, written consent to medical treatment means a consent in writing to any medical or surgical procedure or course of procedures which (a) sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures, (b) acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner, and (c) is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
B. Except as provided in Subsection A of this Section, no evidence shall be admissible to modify or limit the authorization for performance of the procedure or procedures set forth in such written consent.
C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set forth in Paragraph (a) of Subsection A above, and an opportunity shall he afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases.”
In Novak v. Texada et al. Clinic, 514 So.2d 524 (La.App. 3 Cir.1987), writ denied, 515 So.2d 807 (La.1987), the plaintiff claimed that the requirements of the informed consent statute must be satisfied prior to administering a routine flu injection. In affirming the judgment of the trial court in favor of the defendants, we noted that routine medical procedures are not subject to the provisions of R.S. 40:1299.40:
“Courts will not impute meanings which lead to absurd results or extend statutes to situations the legislature never intended should be covered. Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (1946).
Although the legislature provided no guidance for determining what constitutes a “medical or surgical procedure”, we find no abuse of discretion in the trial court’s conclusion that it did not extend to a routine flu injection. To hold otherwise would lead to results in the day-today practice of medicine never intended by the legislature.” Id. at 528.
The treatment of a closed wrist fracture is likewise a routine medical procedure in those instances where surgery is not involved. Undoubtedly, the legislature did not intend to impose the requirements of the informed consent statute on physicians and medical personnel performing such a routine procedure. Therefore, we hold that R.S. 40:1299.40 is not applicable to the facts of this case.
Ill
THE PHYSICIANS WHO SAW AND EXAMINED MS. DANIELS AFTER *222 THE ACCIDENT ARE IN THE BEST POSITION TO DETERMINE THE PROPER TREATMENT IN THIS CASE AND HENCE THE GREATER WEIGHT GIVEN TO THE OPINION OF DR. McD ANIEL BY THE TRIAL COURT WAS IMPROPER.
Through this assignment of error, Ms. Daniels is apparently seeking to establish that Dr. Morris’ testimony is entitled to greater weight than that of Dr. McDaniel[2] and Dr. Schutte. In any event, we find this assignment of error to be without merit for several reasons. Firstly, Dr. Morris testified that he saw Ms. Daniels only on two occasions subsequent to the date of the accident in question and that it was for medical problems unrelated to her wrist. This being the case, we see no reason why his testimony should be given greater weight than that of Dr. McDaniel, particularly in light of the fact that Dr. McDaniel is an orthopedic specialist whereas Dr. Morris is a general practitioner. Moreover, the trial court also placed substantial weight on the testimony of Dr. Schutte who, like Dr. Morris, saw Ms. Daniels on only one occasion for treatment purposes. Therefore, while we have no way of knowing exactly how much weight was assigned to the testimony of each witness by the trial court, we do not feel that the testimony of Dr. Morris was entitled to greater weight than that of Dr. McDaniel or Dr. Schutte and consequently, we find this specification of error to be without merit.
IV
THE TRIAL COURT ERRED IN FINDING THAT DR. SCHUTTE WAS NOT NEGLIGENT IN FAILING TO OBTAIN ADEQUATE MEDICAL HISTORY FROM MS. DANIELS.
Prior to administering treatment, the medical personnel at University Medical Center obtained a brief history from Ms. Daniels. Specifically, she was asked if she had allergies, whether she was taking medication, and the history of the injury was obtained. Ms. Daniels claims that this history is inadequate considering the nature of the injuries sustained. We disagree. To begin with, Ms. Daniels introduced no expert testimony or other evidence tending to show that additional history was necessary in order to provide competent medical treatment in this case. Moreover, Dr. McDaniel testified that when dealing with fractures of this nature, which do not require surgery, it is unnecessary to obtain an extensive medical history from the patient. In fact, he states that in his everyday practice, he does little more than examine the area involved and perform a neurovascular check prior to administering treatment. Considering this, we do not feel that the history obtained by the medical personnel at University Medical Center was inadequate nor do we feel that a more extensive history would have lessened the severity of her injury or disability.
V
THE TRIAL COURT ERRED IN GIVING SUBSTANTIAL WEIGHT TO THE TESTIMONY OF DR. JAMES McD AN-IEL.
We have already determined that the trial court did not commit manifest error in finding that Dr. Schutte had, in fact, decided to accept the position of the fracture and immobilize it in that position. Accordingly, Dr. McDaniel’s opinion[3] is not based upon an erroneous finding of fact, as Ms. Daniels contends. Moreover, we find that the evidence clearly supports the trial court’s conclusion that the medical personnel at University Medical Center were not guilty of malpractice. La.R.S. 9:2794 states, in pertinent part, as follows:
*223 “§ 2794. Physicians, dentists, and chiropractic physicians; malpractice; burden of proof; jury charge
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.”
The trial court chose to accept the testimony of the defense expert, Dr. James McDaniel, who specializes in orthopedics. Dr. McDaniel testified that, regardless of the treatment elected, the type of fracture sustained by Ms. Daniels normally leads to deformity and significant functional impairment. Additionally, he states that the possibility of achieving a satisfactory result is further reduced by the fact that Ms. Daniels has osteoporosis (defined as a lack of calcium in the bone which causes the bone to be soft or weak). Upon reviewing the x-rays and other medical data from University Medical Center and Moss Regional Hospital, Dr. McDaniel concluded that the treatment performed by Dr. StAmant and Dr. Schutte in this case was acceptable medical procedure for treatment of this type of injury. He also noted that there are many types of treatment currently being used for colles fractures/one of which is the method employed by Drs. St.Amant and Schutte in this case. Dr. McDaniel explained that the type of fracture Ms. Daniels has is one that will not remain in place once it is reduced, and he would expect it to return to its prior alignment (before reduction) within a period of twenty-four to forty-eight hours. Accordingly, it is clear that Ms. Daniels would have derived little, if any, benefit from Dr. Schutte’s having reduced the fracture prior to applying a cast. Considering Dr. McDaniels’ testimony, as well as the much discretion afforded to the trial court in evaluating the testimony of expert witnesses, we conclude that the trial court did not commit manifest error in finding that the medical personnel at University Medical Center were not guilty of malpractice in this case.
CONCLUSION
In view of the above and foregoing, the judgment of the trial court is affirmed and all costs of this appeal are to be paid by plaintiff-appellant, Patsy Ruth Daniels.
AFFIRMED.

. Neither Dr. St.Amant nor Dr. Schutte have any independent recollection of having seen Ms. Daniels, and their testimony is based upon their review of the University Medical Center records.

. In her argument in reference to this assignment of error, Ms. Daniels’ counsel refers to Dr. St.Amant’s testimony when it is apparent from the record that she intended to make reference to the testimony of Dr. McDaniel.

. In this specification of error, Ms. Daniels’ counsel refers to Dr. St.Amant’s testimony when it is apparent from the record that he intended to make reference to the testimony of Dr. McDaniel, who was tendered and accepted as an expert in the field of orthopedic medicine.