612 So.2d 859 (1992)
Viola K. HONDROULIS
v.
John SCHUHMACHER, M.D., et al.
No. 92-CA-0273.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1992.
Rehearing Denied January 13, 1993.
*860 Edward J. Rice, Jr., Lisa D. Newman, Adams and Reese, New Orleans, for appellants.
Trevor G. Bryan, Roslyn G. Taylor, Bryan, Jupiter, Lewis and Blanson, New Orleans, for appellee.
Before BARRY, WARD and JONES, JJ.
JONES, Judge.
John Schuhmacher, M.D. and his insurer, the Hartford Fire Insurance Company appeal a decision of the trial court holding Dr. Schuhmacher and his insurer liable to the plaintiff, Viola Hondroulis in the amount of $250,000.00.

FACTS
Viola Hondroulis, a fifty-six year old registered nurse, consulted with Dr. Schuhmacher on June 1, 1981 regarding complaints of lower back pain. Conservative treatment was undertaken, but did not provide relief for Mrs. Hondroulis. She was admitted to East Jefferson Hospital for tests on June 15, 1981. While at the hospital, traction therapy was also found to be unsuccessful.
A lumbar myelogram was performed on June 22, which revealed nerve root compression. Dr. Schuhmacher recommended a lumbar laminectomy, which the appellee had previously undergone in 1975. In preparation for the lumbar laminectomy, *861 Mrs. Hondroulis signed a consent form which provided, inter alia:
d) That the nature and purpose of the operation, the possible alternative treatment methods, the risks involved and the possibility of complications had been fully explained to her;
e) That she understood the risk of "loss of function of body organs," associated with the surgery and anesthesia; and
f) That all questions about the procedure had been answered in a satisfactory manner.
Dr. Schuhmacher performed the laminectomy on June 23, 1981. Mrs. Hondroulis developed post-operative complications of bowel and bladder incontinence, in addition to constant pain in both legs. She subsequently consulted with Dr. Levy, a neurologist, who recommended that she seek treatment at a pain clinic. Upon completion of the course of treatment offered by the pain clinic, Mrs. Hondroulis continued to have the same pain. However, she learned coping mechanisms to help her tolerate the pain which continues to plague her.
Mrs. Hondroulis filed suit against Dr. Schuhmacher and his insurer, alleging a failure to obtain informed consent to the lumbar laminectomy. Dr. Schuhmacher filed a motion for summary judgment on the basis that the consent form executed by Mrs. Hondroulis complied in all respects with the requirements of the Louisiana Uniform Consent Law, La.R.S. 40:1299.40. Dr. Schuhmacher's motion for summary judgment was granted and was affirmed by this court. Hondroulis v. Schuhmacher, 521 So.2d 534 (La.App. 4th Cir.1988). On rehearing, the Louisiana Supreme Court reversed the summary judgment and remanded the matter to the trial court. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1989). The court found that the presumption created by La.R.S. 40:1299.40 was a rebuttable presumption. In concluding that there were genuine issues as to material fact which precluded Dr. Schuhmacher from being entitled to judgment as a matter of law simply because Mrs. Hondroulis had signed the consent form, the Court stated:
... Assuming, as we must for purposes of the motion, that the doctor failed to inform Mrs. Hondroulis of the material risk of her loss of bladder control and incontinence that was associated with the surgery, that Mrs. Hondroulis was not aware of this particular hazard, that the materialization of the risk caused her loss of bladder control and incontinence, and that a reasonable patient in the plaintiff's position would have withheld consent to the surgery had the material risk been disclosed, the doctor would not be entitled to judgment because Mrs. Hondroulis should be allowed to recover as a matter of law.
Id. at 421.
On remand, a bench trial was held before the trial court. After hearing the evidence, the trial judge found that the plaintiff had not been adequately informed, thus no informed consent had been obtained for the surgery. For these reasons, judgment was rendered in favor of Mrs. Hondroulis. Dr. Schuhmacher appeals.

DISCUSSION AND LAW
The issue to be decided by this court is whether the trial court correctly applied the test enunciated by the Supreme Court in Hondroulis, supra, for determining whether informed consent had been obtained for surgery.
In Hondroulis, supra, the Court held that an executed consent form presents a rebuttable presumption of informed consent. Generally speaking, the presumption of informed consent may be rebutted by proving the following:
1) There is a material risk which the physician has a duty to disclose.
2) The physician failed to inform the patient about a material risk.
3) The material risk was realized.
4) There is a causal connection between the failure to inform the patient of the risk and realization of the risk.
The materiality test was satisfied when Dr. Schuhmacher, as well as Dr. Richard Levy testified that bowel and bladder incontinence are risks associated with a *862 lumbar laminectomy. Both doctors testified that although this condition rarely occurs, it is a known risk for this type of surgery. Both doctors also testified that for a patient who has had a surgery in this area before, there is a "small increase" in the risk presented. Dr. Schuhmacher further testified that he was aware of the fact that the plaintiff had undergone a prior surgery in this area in 1975. Since both doctors also testified that the severity of this type of disability justified disclosure of the risks to the patient; the trial court correctly concluded that the risks were material risks that should be disclosed to a candidate for a lumbar laminectomy.
The issue of whether Dr. Schuhmacher failed to inform the appellee of the material risks of the surgery was implicitly decided adversely to Dr. Schuhmacher. In addressing this issue the trial court concluded that it was more probable than not that Mrs. Hondroulis was not adequately informed of the risks associated with the lumbar surgery. In reaching this conclusion the court did not address the question of whether Dr. Schuhmacher had a discussion of the specific risk which materialized following the surgery. Rather, the court stated that Mrs. Hondroulis was not adequately informed either because Dr. Schuhmacher did not make the required disclosure, that the disclosure made by him was made in language not understood by Mrs. Hondroulis, or that Mrs. Hondroulis' condition at the time the disclosure was made precluded comprehension of the disclosure.
Dr. Schuhmacher argues that the record supports a finding that he did in fact make the required disclosure. We disagree. The circumstances surrounding the signing of the consent form leads us to conclude that the trial court correctly found that the required disclosure was not made. The record contains conflicting information concerning the time that the consent form was signed. However, the record indicates that any discussion between Dr. Schuhmacher and Mrs. Hondroulis concerning the risks attendant to the surgery would necessarily have occurred after the myelogram was taken which was completed at approximately 6:40 A.M., but prior to the time the consent form was signed at 12:10 P.M. The medical records indicate that Mrs. Hondroulis was heavily sedated during this period in that she had been given 10 mg of valium at 6:00 A.M. prior to being taken to the X-ray room. She was given another 10 mg of valium at 7:40 A.M. and 100 mg of demerol at 9:30 A.M. Mrs. Hondroulis and her daughter testified that she was groggy and upset after the myelogram. Nevertheless, during this period Dr. Schuhmacher, according to his testimony explained the risks attendant to the surgery to Mrs. Hondroulis.
Under these circumstances, we cannot say that the trial judge committed manifest error when he concluded that Mrs. Hondroulis' condition precluded comprehension of any disclosure at this time. Dr. Schuhmacher testified that it was his practice to disclose to patients the risk of bowel and bladder dysfunction, albeit a rare, unusual risk. He also testified that he would never go forward with surgery without having discussed these possible complications with his patient. However, he admitted that he had no specific, independent recollection of the time, place or circumstances of the alleged discussion with Mrs. Hondroulis. The appellee testified that no disclosure had been made regarding the benefits or risks of the laminectomy. This testimony was corroborated by her daughter. Based on their testimony the trial court could simply have decided that Mrs. Hondroulis was more credible than Dr. Schuhmacher when she testified that he did not advise her of the risks at any time prior to the surgery. The trial court found it "more probable than not" that the appellee was not adequately informed. As stated in Rosell v. ESCO, 549 So.2d 840 (La.1989), these factual findings of the trial court are based on a determination of credibility and are afforded great deference.
Nor did Dr. Schuhmacher present any credible evidence to establish that Mrs. Hondroulis knew bowel and bladder incontinence was a known risk of this particular type of surgery. The fact that she had worked as a nurse for several years prior *863 to this surgery does not in and of itself dictate a finding that she knew of the risk. She testified that she did not know about the risk. The issue of whether she knew of the risk was a factual issue to be decided by the trial court who decided this issue in her favor. We find no manifest error in this finding.
Dr. Schuhmacher argues that the trial court used a subjective standard of causation, in contravention of the objective standard dictated by Hondroulis, supra. He refers to the following language in the trial court's reasons for judgment to support his position:
... in the event Mrs. Hondroulis had been aware of the particular risks ... she would have withheld consent.
We reject appellant's contention that this language indicates that the trial court utilized a subjective as opposed to an objective standard in determining causation. In an earlier portion of its opinion the trial court specifically stated:
The Supreme Court adopted an objective standard of proof, that is, whether a reasonable person would conclude that the patient was aware of the risk and was willing to encounter the risk.
This statement demonstrates that the trial court clearly understood that the test to be used in determining causation was an objective standard. It is inconceivable that the trial court would have enunciated the proper test and then refused to apply it. The fact that the trial court did not specifically state that a reasonable person in plaintiff's position would have withheld consent had she been informed of the material risks does not mean that the court used the wrong standard. Implicit in the court's finding that Mrs. Hondroulis would have withheld consent had she been aware of the particular risks was a finding that she was a reasonable person. There is nothing in the record to suggest that she was not a reasonable person, therefore, we see no reason to believe that she would have acted any differently than a reasonable person.
The issue of whether a reasonable person would have refused to give consent for this surgery was a fact question to be determined by the trial court. The trial court implicitly resolved this issue in favor of the plaintiff. We find no error in the court's finding.
The trial court found that Mrs. Hondroulis would have refused consent to surgery had she been advised of the pain clinic alternative. Appellant argues that the testimony of both Drs. Levy and Schuhmacher establish that the pain clinic was not a reasonable alternative. Mrs. Hondroulis offered no objection or contrary evidence to this testimony. The evidence therefore did not support the trial court's finding that a pain clinic was a reasonable alternative to the surgery. However, because we have already found that Dr. Schuhmacher failed to disclose the risk of bowel and bladder dysfunction, the fact that the court erroneously concluded that a pain clinic was a reasonable alternative does not affect our conclusion that informed consent was not given by Mrs. Hondroulis. The record contains sufficient evidence to support a finding that Dr. Schuhmacher did not meaningfully disclose any risks of the surgery, nor did he discuss any alternative treatments or even the option of no treatment. For this reason, the fact that the trial court erroneously concluded that the pain clinic was a viable alternative treatment is not relevant.
Finally, Dr. Schuhmacher maintains that the trial court abused its discretion in awarding a judgment of $250,000.00 since no evidence was presented regarding damages. We disagree. Based on the individual circumstances of this case, we find that the trial court did not abuse its discretion by awarding the plaintiff a total of $250,000.00 for losses that she suffered and will continue to suffer because of the problems attendant to her condition. Mrs. Hondroulis and her daughter testified concerning the numerous changes that exist in Mrs. Hondroulis' life because of the inconvenience she now suffers. She is no longer able to engage in many of the social activities that she engaged in prior to the surgery. Additionally, it is obvious that her condition is permanent. There was ample testimony regarding the loss of quality of *864 life, mental anguish and the physical disability suffered by Mrs. Hondroulis due to the bowel and bladder dysfunction which resulted from the surgery. The evidence supports the $250,000 judgment. See Hidding v. Williams, 578 So.2d 1192 (La.App. 5th Cir.1991), wherein the court affirmed a jury award of $307,006.50 for loss of bowel and bladder control resulting from surgery.
For the reasons herein given, the judgment of the trial court is affirmed.
AFFIRMED.