WICKER, Judge.
This appeal arises from a medical malpractice suit filed on behalf of John D. Livings, plaintiff/appellant, against Dr. Joseph A. LaNasa, Jr., defendant/appellee. Livings alleges an unauthorized surgical procedure was performed by Dr. LaNasa which caused loss of bladder control and constant pain. Livings further alleges Dr. LaNasa failed to disclose information regarding the surgical procedure performed as well as its known risks. He asserts had he been adequately informed, he would not have agreed to the surgery by Dr. LaNasa but would have chosen another physician. He does not allege Dr. LaNasa was negligent. Dr. LaNasa filed a motion for summary judgment urging that Livings’ signature on the surgical consent form, coupled with the circumstances in this case preclude recovery. The trial judge granted the motion and dismissed Livings’ claim. We affirm.
Livings alleges Dr. LaNasa diagnosed his medical condition as a bladder tumor. He predicted its chances of being malignant at 98%. Dr. LaNasa recommended an immediate bladder operation to which Livings consented. Livings signed the following consent form:
*1283 [[Image here]]
*1284 Instead of performing surgery to remove a bladder tumor, Dr. LaNasa performed a transurethral resection of the prostate. Livings alleges he suffered loss of bladder control and pain. He asserts that had he known of the risks of the surgery he would not have allowed Dr. LaNasa to operate.
Dr. LaNasa filed an affidavit in support of the motion for summary judgment in which he averred in part:
Mr. Livings was admitted to the hospital and underwent an intravenous pyelo-gram which revealed an irregular filling defect, within the bladder lumen, adjacent to the bladder neck outlet. I felt that this finding was most consistent with a bladder tumor, and recommended a cystoscopy and a transurethral resection to precisely locate, and hopefully, remove the source of Mr. Livings’ hemorrhage.
I discussed my findings and recommendations with Mr. Livings, and obtained a surgical consent from him, a photocopy of which is attached to this Affidavit. While Mr. Livings was under general anesthesia, and during the course of the surgery, I discovered that his bleeding was the result of an abnormal growth of prostatic tissue which had formed a “ball-valve” type protrusion into the bladder cavity. I performed a transur-ethral resection of the prostate, removing this tissue along with other tissue which contributed to Mr. Livings’ problem. Bladder tissue is contiguous with prostate tissue at this particular location, and although the abnormal tissue grew from the prostate, it protruded into the bladder cavity.
Livings’ deposition and affidavit were submitted in opposition to the motion. By affidavit, Livings averred in part:
Defendant, Dr. LaNasa never informed affiant of any possible cause of the blood and clots in his urine except Dr. LaNa-sa’s guess, that affiant suffered from a bladder tumor.
Affiant consented to Dr. LaNasa’s resection of the suspected tumor.
Dr. LaNasa performed a resection of af-fiant’s prostate and not his bladder. Affiant did not consent to a resection of affiant’s prostate.
Affiant was never informed with any degree of particularity the risk of incontinence which could result from a resection of the prostate.
Affiant would not have consented to a resection of the prostate by Dr. LaNasa. Affiant suffers urinary incontinence as a result of Dr. LaNasa’s resection surgery to affiant’s prostate.
Livings testified by deposition as follows. Dr. LaNasa told him his bloody urine was definitely not a prostate problem. Dr. La-Nasa informed Livings he had a tumor of the bladder and that 98% of these are malignant. Livings was informed after the surgery that Dr. LaNasa operated on his prostate. He stated had he known Dr. LaNasa was to perform prostate surgery he would have refused the operation and seen Dr. Max Green. Dr. Green had successfully performed prostate surgery approximately twelve years prior , to the deposition taken in 1985. Livings would have agreed to a transurethral resection of the prostate performed by Dr. Green since he had no complications in prior prostate surgery with Dr. Green.
However, Livings testified Dr. LaNasa informed him he would “go through the penis” to remove the tumor. He agreed to the surgery.
Livings appeals the granting of the motion for summary judgment and specifies the following errors:
1. The trial judge erred since there is no evidence in the record that the actual surgery was either an emergency operation or was authorized, and
2. The trial judge erred in concluding there was no issue of material fact as to whether Livings would have declined the surgery and thereby considered it irrelevant whether Livings could prove incontinence was a known, material risk of the surgery.
*1285 BATTERY:
The trial judge concluded there was no issue of material fact regarding whether Dr. LaNasa performed an unauthorized operation. He reasoned the physician performed the authorized surgical procedure and that it was of no moment that the growth removed was from the prostate rather than the bladder.
We agree. Livings’ deposition testimony described above, the consent form, and Dr. LaNasa’s affidavit show there is no dispute regarding the surgical procedure authorized and the surgical procedure actually used.
INFORMED CONSENT:
The trial judge reasoned there is “no issue of material fact as to whether [Livings] would have declined the surgery, even assuming that bladder incontinence was a known material risk not disclosed to him.” He based this conclusion on Livings’ assertion he would have consented to the surgery by Dr. Green rather than by Dr. LaNasa had he known the actual problem was the prostate. Therefore, in retrospect Livings would have chosen another surgeon. Furthermore, Livings does not allege any negligence on Dr. LaNasa’s part.
In Hondroulis v. Schumacher, 546 So.2d 466, 470 (La.1989) the Supreme Court held:
There must be a causal relationship between the doctor’s failure to disclose material information and material risk of damage to the patient [citations omitted]. Because of the likelihood of a patient’s bias in testifying in hindsight on this hypothetical matter, this court and others have adopted an objective standard of causation: whether a reasonable patient in the plaintiff’s position would have consented to the treatment or procedure had the material information and risks been disclosed, [citations omitted].
Since Livings would have consented to the surgery there is no issue of material fact relative to his alleged lack of informed consent.
Accordingly, the motion for summary judgment was properly granted. La.C. Civ.P. art. 966. The judgment is affirmed at appellant’s cost.
AFFIRMED.