711 So.2d 837 (1998)
Deborah and Neson ARDOIN, Plaintiffs-Appellants,
v.
Dr. Gerald MURDOCK, Defendant-Appellee.
No. 97-1468.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1998.
*838 Anthony Craig Dupre, John Blake Deshotels, Ville Platte, for Deborah and Neson Ardoin.
Marc W. Judice, Lafayette, for Dr. Gerald Murdock.
Before THIBODEAUX, COOKS and AMY, JJ.
*839 THIBODEAUX, Judge.
Deborah and Neson Ardoin filed a medical malpractice suit against Dr. Gerald Murdock, seeking damages for postoperative injuries sustained by Mrs. Ardoin after she underwent a first rib resection procedure. Mrs. Ardoin contends that Dr. Murdock failed to inform her of all material risks associated with the surgical procedure. Therefore, Dr. Murdock failed to properly obtain her informed consent to the surgery.
After a jury trial on the matter, judgment was rendered in favor of Dr. Murdock. The jury determined that the plaintiff failed to sustain the burden of proving the existence of a material risk or risks of the surgery unknown to the plaintiff and, thereby, denied the plaintiff's request for damages. From this judgment, the plaintiff appeals.
Based on the following reasons, we affirm the judgment of the trial court.

I.

ISSUES
We shall consider:
1. whether the trial jury erred in finding that the plaintiff failed to prove the existence of a material risk or risks of the surgery unknown to the plaintiff; and
2. whether the trial court erred in limiting each party to five jury charges and in failing to properly instruct the jury on the issue of negligence as it applies to medical malpractice suits.

II.

FACTS
In 1987, Deborah Ardoin began experiencing problems with her right arm. The symptoms included numbness, tingling, weakness and, occasionally, an inability to securely grasp objects. As these symptoms worsened, Mrs. Ardoin consulted Dr. Murdock. Upon examining Mrs. Ardoin, Dr. Murdock diagnosed her condition as thoracic outlet syndrome.
Essentially, thoracic outlet syndrome is a severe nerve impingement situated in the upper neck region. This condition involves the compression or narrowing of a space through which the nerves and blood vessels travel. Common symptoms include numbness and tingling. If untreated, the condition deteriorates and causes severe pain and loss of motor control.
To remedy Mrs. Ardoin's complications, Dr. Murdock proposed a surgical procedure known as a first rib resection, which would alleviate the pressure on the nerves and restore full function to her right arm. The procedure entails removing the first rib to take pressure off the nerve and blood vessels as they exist in the thoracic cavity.
After discussing the procedure and the associated risks with Dr. Murdock, Mrs. Ardoin consented to the surgery. For approximately one year following the surgery, Mrs. Ardoin experienced some numbness and tingling in her right arm. The symptoms were attributable to the effects of the surgery. Eventually, these symptoms subsided.
Eight years later, in 1995, Mrs. Ardoin developed identical symptoms in her left arm. The symptoms of numbness and tingling had progressed to the point where she was losing motor control and unable to firmly grasp objects. After consulting with Dr. Murdock, Mrs. Ardoin was again diagnosed with thoracic outlet syndrome which, in this instance, affected her left arm. On August 1, 1995, she elected to undergo a left first rib resection to relieve nerve pressure on the left side of her body.
Shortly after the surgery, Mrs. Ardoin complained of numbness and tingling in her left arm, similar to those symptoms which she experienced after the 1987 surgery. As her condition worsened over the course of several months, the pain in her left arm intensified. She was eventually diagnosed with sympathetic reflex dystrophy and C8 nerve root damage.
Subsequently, Mrs. Ardoin filed a claim with a medical review panel, alleging Dr. Murdock failed to obtain her informed consent to the surgery. On March 5, 1997, the panel rendered its decision, stating that Dr. Murdock failed to comply with the appropriate standard of care because the medical *840 consent form lacked the specificity required to inform a patient of the possible complications of the proposed surgery. However, the panel found no evidence that the surgical procedure was performed in a negligent manner and held that Mrs. Ardoin failed to establish a causal connection between the alleged conduct and her postoperative injuries.
On March 14, 1997, Mrs. Ardoin and her husband filed a petition for damages against Dr. Murdock, alleging a lack of informed consent. The suit was tried before a jury. After reviewing the evidence, the jury found that the plaintiff, Mrs. Ardoin, failed to prove the existence of a material risk or risks of the surgery unknown to her. The jury rendered judgment in favor of the defendant, Dr. Murdock, and denied the plaintiff's request for damages.

III.

LAW & DISCUSSION

Knowledge of Material Risks
The plaintiff contends that the trial jury erred in finding that she did not prove the existence of a material risk or risks of the surgery unknown to her. The plaintiff argues that Dr. Murdock failed to disclose all material risks associated with a left first rib resection in accordance with the Louisiana Medical Disclosure Act, La.R.S. 40:1299.40. Therefore, Dr. Murdock failed to obtain the plaintiff's informed consent to the surgery and, thereby, should be held liable for the plaintiff's damages. We disagree.
A review of a trial jury's findings presents a question of fact. If the findings of the trial jury are reasonable, in light of the record, an appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In the absence of manifest error or unless it is clearly wrong, a jury's findings of fact will not be disturbed. Id.
The presumption of informed consent regarding a medical patient is statutorily governed by La.R.S. 40:1299.40, which, in pertinent part, provides:
A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means a consent in writing to any medical or surgical procedure or course of procedures which: sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
Thus, once a patient signs a written document apprising him of the risks associated with the proposed medical procedure, the patient's consent is presumed to be valid and effective. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988). However, for a physician to avail himself to this statutory presumption, the written document must be prepared in accordance with the guidelines of the Louisiana Medical Disclosure Act under La.R.S. 40:1299.40. Id.
In this suit, the defendant, Dr. Murdock, testified that he failed to prepare the medical consent forms pursuant to the recommended procedures under La.R.S. 40:1299.40. As a result, the defendant does not fall within the protection of the statutory presumption of informed consent. Therefore, the defendant is unable to assert this presumption in response to the plaintiff's claim.
Nevertheless, to succeed on a cause of action alleging a lack of informed consent, the plaintiff has the burden of proving the following elements:

*841 1) The existence of a material risk unknown to the plaintiff;
2) The failure of the physician to disclose the material risk; and,
3) A causal relationship between the physician's failure to disclose the material risk and the actual injury sustained by the plaintiff (i.e., that a reasonable person would have either refused the treatment or sought alternative treatment, if the material risk had been disclosed by the physician).
Hondroulis, 553 So.2d 398. Further, the plaintiff must prove these elements by a preponderance of the evidence. A failure to affirmatively establish any one of these elements will negate the plaintiff's claim and preclude the imposition of damages.
In this suit, the aforementioned elements of informed consent were incorporated into the jury verdict form. The form read as follows:
1. Was there the existence of a material risk or risks of this surgery unknown to Deborah Ardoin?
 Yes_____ No_____
If your answer is yes, proceed to number 2.
If your answer is no, go no further.
2. Was there a failure to properly disclose that risk or risks to her by Dr. Murdock?
 Yes_____ No_____
If your answer is yes, proceed to number 3.
If your answer is no, go no further.
3. Do you find that a reasonable person would have refused or sought alternative treatment had Dr. Gerald Murdock properly informed Deborah Ardoin of the material risk or risks associated with this surgery?
 Yes_____ No_____
If your answer is yes, proceed to number 4.
If your answer is no, go no further.
4. Please state the amount of damages, if any, which you have found the plaintiffs are entitled to recover:

 Deborah Ardoin $_____ physical pain and
 suffering; past, present
 & future
 $_____ mental pain and suffering;
 past, present
 & future
 $_____ future medical expenses
 $_____ loss of wages and/or
 earning capacity;
 past, present & future
 Neson Ardoin $_____ loss of consortium

Upon reviewing the evidence, the jury answered interrogatory number one in the negative. Based on the evidence presented at trial, the jury determined that the plaintiff failed to establish the existence of a material risk or risks of the first rib resection procedure unknown to the plaintiff. The jury's determination regarding this issue negated the plaintiff's claim. The plaintiff's request for damages was denied.
In light of the trial record, we find that the jury's factual findings were adequately supported by the evidence. The plaintiff is a trained phlebotomist and licensed practical nurse (L.P.N.). For twelve years, she was employed as an L.P.N. at Savoy Memorial Hospital. Having the benefit of extensive experience as a health care provider, the plaintiff is deemed to be more cognizant of the risks involved with surgical procedures.
The record shows that the plaintiff had previously consented to and undergone a right first rib resection in 1987 to relieve nerve tension on the right side of her body. Prior to the 1987 surgery, Dr. Murdock apprised the plaintiff of all risks, potential complications, and postoperative effects associated with this procedure. Subsequently, in 1995, the plaintiff consented to another operation involving the identical surgical procedure, a first rib resection. Relying on her experience with the 1987 surgery, the plaintiff should have been fully aware of the risks associated with a first rib resection procedure.
Further, the plaintiff failed to demonstrate any omission on the part of Dr. Murdock, prior to the 1995 surgery, which constitutes a failure to disclose a material risk of the proposed surgical procedure. The record shows that, in the admit notes of July 28, 1995 and *842 August 1, 1995, the surgical procedure was explained to and accepted by the plaintiff. No objections were expressed by the plaintiff on either occasion.
Therefore, we conclude that the jury's determination was reasonable under the specific, factual circumstances of this case. The factual findings of the jury are properly supported by the record and void of manifest error.

Jury Charges
The plaintiff contends that the trial judge erred by limiting each party to only five of their requested jury charges. The plaintiff argues that this judicially-imposed limitation deprived her of the ability to prepare adequate jury instructions regarding the issue of informed consent and the Louisiana Medical Disclosure Act. We disagree.
As a practical matter, a "trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; he must, however, correctly charge the jury." Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1152 (La.App. 3 Cir.1991); Oatis v. Catalytic, Inc., 433 So.2d 328 (La.App. 3rd Cir.), writ denied, 441 So.2d 210, 215 (La. 1983). In this instance, the trial judge has great discretion in limiting the number of jury charges awarded to each party. We find that the trial judge's limitation of jury charges was not an abuse of its discretion, nor does it present sufficient grounds for reversible error.
Alternatively, in a supplemental pleading to this court, the plaintiff argues that the trial judge improperly instructed the jury on the legal principles applicable to a medical malpractice suit. The plaintiff also contends that the trial judge erred in instructing the jury that the negligence of Dr. Murdock was not at issue in this suit. We disagree.
In determining whether the rendition of jury instructions constitutes reversible error, this court has adhered to the following principles:
Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. The adequacy of jury instructions must be determined in light of the jury instructions as a whole. An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial.
Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1152 (La.App. 3 Cir.1991) (citations omitted).
The record shows that, after opening statements by counsel for both parties, the trial judge made the following statement admonishing the jury members about their function in this suit. The trial judge stated:
All right members of the jury before we go any further[,] I want you to understand exactly what, exactly what your function is going to be over here.
Number one, this is what you are going to have to find. Whether there was or not, number one. Was there an existence of a material risk to Deborah Ardoin? Number two, was there a failure to disclose that risk by Dr. Murdock? Number three, would a reasonable person under similar circumstances have rejected the surgery or choose a different course of treatment, had the disclosure been made to her? Number four, damages, if any.
Now number five, I want, it's been said to you already and I'm going to say it again. The negligence of Dr. Murdock in the performance of the surgery is not an issue in the case. Ya'll understand that?
The plaintiff argues that this instruction was prejudicial to her claim. To the contrary, the primary purpose of this instruction was to clarify the objectives of the jury and to set forth the appropriate issues to be resolved in this suit. We find that the instruction was not so inadequate as to constitute reversible error.
Further, the plaintiff argues that, in rendering the jury instructions, the trial judge inappropriately mentioned the concept of assault as it relates to informed consent. Specifically, the trial judge stated:
The doctrine of consent to medical treatment is rooted in the idea that a person has the right to make major decisions concerning his or her own body. I quote[,] *843 "every human being of adult years and sound mind has a right to determine what shall be done with his or her own body and a surgeon who performs an operation without his or, without his patient's consent, commits an assault for which he is liable in damages."
We find that the trial judge simply noted the historical basis for the doctrine of informed consent. Standing alone, this historical reference may indeed prejudice the plaintiff's claim. However, when viewed in light of the jury instructions as a whole, the reference becomes inconsequential. The trial judge thoroughly discussed and explained the legal principles applicable to this suit and the elements which must be proved.
After reviewing the jury instructions as a whole, we conclude that the trial judge gave instructions which fairly and reasonably pointed up the issues presented by the pleadings and evidence and which provided the correct principles of law for the jury's application thereto. Therefore, we find that the trial judge did not err in rendering its instructions to the jury.

IV.

CONCLUSION
Based on the foregoing reasons, we affirm the judgment of the trial court denying the plaintiff's suit for damages. All costs are assessed against the plaintiff-appellant, Deborah Ardoin.
AFFIRMED.
AMY, J., concurs.