# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 08-1508

JOHN MAYBRIER

VERSUS

LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 68603-A
HONORABLE LARRY VIDRINE, PRESIDING
**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy and J. David Painter, Judges.

Amy, J., concurs in the result and assigns reasons.

**REVERSED AND REMANDED.**

R. Scott Iles
1200 W. University Avenue
Lafayette, LA 70502
(337) 234-8800
COUNSEL FOR PLAINTIFF-APPELLANT:
        John Maybrier


Marc W. Judice
H.L. Tuten, III
Judice & Adley
926 Coolidge Blvd.
P.O. Drawer 51769
Lafayette, LA 70505-1769
(337) 235-2405
COUNSEL FOR DEFENDANTS-APPELLEES:
        Dr. Gerald Murdock and LAMMICO

**COOKS, Judge.**

Plaintiff, John Maybrier, appeals the judgment of the trial court granting the Defendant's Motion for Summary Judgment and dismissing his medical malpractice suit. For the following reasons, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

On December 1, 2004, John Maybrier was admitted to Savoy Medical Center for a hemorrhoidectomy for which an informed consent form was executed. Plaintiff alleges in his petition that in addition to the hemorrhoidectomy consented to by him, Dr. Murdock took it upon himself to perform a colonoscopy for which no informed consent had been given. The colonoscopy resulted in a perforated bowel requiring additional surgery.

We note Plaintiff has at all times maintained he was not aware a colonoscopy would be performed on the date of the surgery. Defendants have argued there were discussions with Plaintiff regarding the possibility of a colonoscopy. The informed consent form which Plaintiff signed on that date, lists only hemorrhoidectomy, in typed letters, in the description of the procedure. The word colonoscopy was handwritten on the informed consent. In any event, it is undisputed the informed consent failed to list the known, material risks associated with a colonoscopy.

The matter was initially heard by a medical review panel. After hearing the evidence and reviewing the submitted documents, including the patient consent form, the panel issued unanimous findings concluding that Dr. Murdock did not deviate from the standard of care. The panel determined that, despite the complications, Dr. Murdock's care and procedures were appropriate and met the applicable standards of care. Although counsel for Plaintiff maintained in a position paper to the panel that the issue of consent was the "focus" of Plaintiff's case, the panel did not address the

issue of consent in its findings.

Plaintiff subsequently filed a timely petition for damages based on the lack of informed consent for the colonoscopy procedure against Dr. Murdock and his insurer, Lousiana Medical Mutual Insurance Company (LAMMICO). Defendants filed a motion for summary judgment. The trial court denied the motion, noting Dr. Paul Breaux, a member of the medical review panel, testified by deposition that the form signed by Plaintiff failed to meet the applicable standard of care for securing informed consent.

Subsequently, Defendants deposed Plaintiff, wherein Plaintiff acknowledged even if he was aware of the risks of a perforated colon as a result of a colonoscopy, he still likely would have had the colonoscopy performed, but with a specialist/gastroenterologist rather than a general surgeon. Defendants again filed a motion for summary judgment, contending that Louisiana jurisprudence holds if a patient admits he would have agreed to allow another physician to perform the medical procedure in question, despite any potential risks, there is no claim for lack of informed consent. Plaintiff disputed this contention, noting he testified he would have only allowed a gastroenterologist, which Dr. Murdock was not, to perform the procedure.

The trial court granted the motion for summary judgment, issuing the following written reasons:

> In the instant motion, defendants allege that in the deposition of plaintiff, Mr. Maybrier, he testified that had he been informed of all the risks of the Colonoscopy he would have opted to have it done by a Gastroenterologist.

> In support of its motion defendants cite the case of *Livings v. Lanasa*, 552 So.2d 1281 (La.App. 5th Cir. 1989) which reflects a similar set of circumstances which are present in the instant case.

-2-

After reading all of the pleadings, memos and arguments of counsel, this Court finds that *Livings v. Lanasa*, cited supra, holds water and requires that this Court grant defendants Motion for Summary Judgment.

Plaintiff appeals, asserting the trial court erred in granting the motion for summary judgment.

## ANALYSIS

It is well-settled that "[a]ppellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183; *Leger v. Louisiana Med. Mut. Ins. Co.*, 98-1098 (La.App. 3 Cir. 3/31/99), 732 So.2d 654, 657, *writ denied*, 99-1253 (La. 6/18/99), 745 So.2d 30. The burden of persuasion remains always with the movant.

According to La.R.S. 9:2794(A), the plaintiff bears the burden of establishing a breach of the standard of care in a medical malpractice case. The burden is three pronged. He must first prove the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed in Louisiana and actively practicing in a similar community or locale and under similar circumstances. Still in connection with the first prong, he must also show the location where the defendant practices in a particular specialty and where the alleged acts of negligence raise issues peculiar to that specialty, then prove the degree of care ordinarily practiced by physicians within that specialty. The second prong requires the plaintiff to prove that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence along with his best judgment in the application of that skill. Third, causation must be proven, namely, that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, plaintiff suffered injuries that he would not have otherwise suffered.

As in a case alleging breach of the medical standard of care, the plaintiff in an informed consent case bears the burden of proof. He must show: (1) the existence of a material risk which the physician must disclose; (2) the failure of the physician to inform the patient of a material risk; (3) the realization of the material risk; and (4) a causal connection between the failure to inform the patient of the risk and realization of the risk. *Hondroulis v. Schuhmacher*, 612 So.2d 859 (La.App. 4 Cir.1992) (*citing Hondroulis v. Schuhmacher*, 553 So.2d 398 (La.1988)); *Leger*, 732 So.2d 654; *Ardoin v. Murdock*, 97-1468 (La.App. 3 Cir. 4/15/98), 711 So.2d 837, *writ denied*, 98-1362 (La. 7/2/98), 724 So.2d 734; *Guidry v. Neu*, 97-810 (La.App. 3 Cir. 12/10/97), 708 So.2d 740.

The record before us establishes when Plaintiff consulted with Dr. Murdock on November 7, 2004, his chief complaint was hemorrhoids. Dr. Murdock's notations for that visit read: "Went to ER sat at Savoy for hemorrhoids. 8 to 9 years with hemorrhoids (illegible) - painful - exam in 2 plus - Diagnosis: Hemorrhoids - recommendation: Hemorrhoidectomy (illegible)." After discussing his treatment options, Plaintiff agreed to undergo the hemorrhoidectomy. He presented on December 1, 2004 at Savoy Medical Center for the hemorrhoidectomy. He was given an informed consent for the hemorrhoidectomy, which he signed. The copy of the informed consent in the record also shows the word colonoscopy was handwritten next to the typed word "hemorrhoidectomy." Plaintiff denied any consent was ever given for the performance of a colonoscopy on that date. The procedure was successfully completed; however, Dr. Murdock determined that Plaintiff had an asymptomatic colon. Dr. Murdock, knowing that Plaintiff had a family history of colon cancer, believed he might benefit from a colonoscopy. While doing so Dr. Murdock perforated the bowel, which required additional surgery and this lawsuit.

It is clear from the record, that the informed consent which Plaintiff read and signed on the morning of his surgery did not list material risks pertinent to a colonoscopy. Dr. Paul Breaux, a member of the medical review panel, specifically concluded in his deposition that the consent form failed to meet the applicable standard of care for informed consent. The trial court agreed and denied Defendants' first motion for summary judgment on this issue. Although Defendants spend much space in brief arguing the informed consent form was sufficient even as it relates to material risks associated with a colonoscopy, the record does not bear that out. In granting Defendants' motion for summary judgment on the issue of informed consent, the trial court did so relying solely on the Fifth Circuit Court of Appeal decision in *Livings v. LaNasa*, 552 So.2d 1281 (La.App. 5 Cir. 1989).

In *Livings*, the patient was suffering from blood and clots in his urine. He was diagnosed as having a bladder tumor and a bladder operation was recommended by Dr. LaNasa, to which the patient consented. During the course of the surgery, Dr. LaNasa discovered that the patient actually suffered from an abnormal growth of prostatic tissue which protruded into the bladder cavity. Therefore, instead of performing surgery to remove a bladder tumor, a transurethral resection of the prostate was performed. The patient filed suit alleging an unauthorized surgical procedure was performed, and that Dr. LaNasa failed to disclose information regarding the surgical procedure performed as well as its known risks. The patient maintained had he been adequately informed, he would not have agreed to the prostate surgery by Dr. LaNasa but would have chosen another physician, Dr. Green, who twelve years earlier had successfully performed prostate surgery on him. Dr. LaNasa filed a motion for summary judgment urging the patient's signature on the surgical consent form, coupled with the circumstances in the case precluded recovery.

The trial judge agreed.

The court ruled that Dr. LaNasa had performed an authorized surgical procedure and that it was of no moment that the growth removed was from the prostate rather than the bladder. The court concluded Dr. LaNasa could not be held liable for a lack of informed consent based on the patient's assertion that he would have chosen another physician to perform the surgery had he known that the actual problem was the prostate. The *Livings* court stated as follows:

> The trial judge reasoned there is "no issue of material fact as to whether [Livings] would have declined the surgery, even assuming that bladder incontinence was a known material risk not disclosed to him." He based this conclusion on Livings' assertion he would have consented to the surgery by Dr. Green rather than by Dr. LaNasa had he known the actual problem was the prostate. Therefore, in retrospect Livings would have chosen another surgeon. Furthermore, Livings does not allege any negligence on Dr. LaNasa's part.

> In *Hondroulis v. Schumacher*, 546 So.2d 466, 470 (La.1989) the Supreme Court held:

>> There must be a causal relationship between the doctor's failure to disclose material information and material risk of damage to the patient [citations omitted]. Because of the likelihood of a patient's bias in testifying in hindsight on this hypothetical matter, this court and others have adopted an objective standard of causation: whether a reasonable patient in the plaintiff's position would have consented to the treatment or procedure had the material information and risks been disclosed. [citations omitted].

> Since Livings would have consented to the surgery there is no issue of material fact relative to his alleged lack of informed consent.

> Accordingly, the motion for summary judgment was properly granted.

Writs to the Supreme Court were not taken in *Livings*. We also note the *Livings* case has not been cited or referenced in any other case since its release.

Although we agree the facts in *Livings* and the instant case are "similar," there are key factual distinctions. In the present case, Plaintiff specifically testified if he

-6-

knew he was going to need a colonoscopy, he would have demanded that a gastroenterologist (a specialist) perform the procedure. His testimony was as follows:

> Q: And, so what I was – my question is: Earlier I asked you if you would have known, or been told about possible perforated colon as a result of the colonoscopy, you testified, "I would not have agreed to colonoscopy"; is that correct?
>
> A: No, sir. I would have went to a gastroenterologist.
>
> Q: Would you – if a gastroenterologist would have told you there still is – even with me, a gastroenterologist, performing the procedure – there still is a risk of perforated colon?
>
> A: If you would have – we would have spoke about it, wouldn't we?
>
> Q: You and the gastroenterologist?
>
> A: Yes, sir.
>
> Q: Okay. Let's assume that you did.
>
> A: I would have taken my chances with the specialist, yes, sir.
>
> Q: Let me ask you this: Are you – and you may not know this. I didn't know this until I looked it up. Are you aware that seven percent of untreated patients with a family history of colon cancer develop cancer by age 21, and 90 percent by age 45?
>
> A: No, sir.
>
> Q: If you had been made aware of that fact, would you have agreed with colonoscopy?
>
> A: By a specialist, yes.

There is no indication in *Livings* that Dr. Green, who the patient would have used to perform the prostate surgery was any more qualified or specialized in that area of medicine than Dr. LaNasa.

We also find it significant that the procedure which Plaintiff gave his consent for, the hemorrhoidectomy, *was successfully completed* by Dr. Murdock. Despite Dr. Murdock finding that Plaintiff had an asymptomatic colon, he felt based on Plaintiff's family history of colon cancer that he would benefit from a colonosopy. Dr. Murdock

then made a *unilateral* decision at that time to perform the procedure. It is undisputed the colonoscopy performed by Dr. Murdock was not necessary, or even related to the hemorrhoidectomy or any other condition discovered during the procedure which reasonably warranted immediate medical care. The events which transpired in this case are completely different from the emergency procedure in *Livings*. In *Livings*, the patient was experiencing bleeding and clotting in his urine. Dr. LaNasa, who first suspected it was a bladder tumor that was causing the symptoms, discovered that in fact the patient's medical problems resulted from a growth of prostatic tissue. Dr. LaNasa when faced with a choice to continue with the surgery and remedy the patient's problem, or to "close him up" knowing a second surgery would be required to stop the patient's serious ongoing condition reasonably opted to proceed. Dr. LaNasa specifically noted that bladder tissue is contiguous with prostate tissue, and although the tissue grew from the prostate, it protruded into the bladder cavity. On the other hand, the colonoscopy in this case was not essential to remedying Plaintiff's problem with hemorrhoids.

The informed consent doctrine is based on the principle that every adult of sound mind has the right to determine what will be done to his or her own body. *LaCaze v. Collier*, 434 So.2d 1039 (La.1983). Where circumstances permit, a patient should be told the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the risks involved, the prospects of success, the risks of failing to undergo the treatment or procedure, and the risks of any alternative methods of treatment. *Hondroulis*, 553 So.2d 398. In a case where the plaintiff alleges there has been no consent, the law requires only proof of a material risk that was not disclosed and the occurrence of that risk. *LaCaze*, 434 So.2d at 1040, n. 1. It is undisputed in this case that perforated bowel is a material risk of a colonoscopy.

Further, Dr. Breaux testified in his deposition that the informed consent given to Plaintiff did not list perforated bowel as a material risk. We note as well, the law provides a rare or unforeseeable risk of medical treatment need not be disclosed to a patient unless a risk is medically known and of a magnitude that would be material in a reasonable patient's decision to undergo treatment. *Hondroulis*, 553 So.2d at 413. Generally, a "risk is material when a reasonable person in what the doctor knows or should know to be the patient's position[,] would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed therapy." *Hondroulis*, 553 So.2d at 411-412, *citing LaCaze*, 434 So.2d at 1045-46. The record establishes this was not a situation where the risk of perforated bowel associated with a colonoscopy was remote. The risk of a perforated bowel is a common, material risk of a colonoscopy.

In *Pizzalotto v. Wilson*, 437 So.2d 859 (La.1983), the Louisiana Supreme Court established the rule that a physician may not act beyond his patient's authorization, except when a situation seriously threatens the health or life of the patient. That exception represented the one instance where a patient's consent would be implied. In *Pizzalotto*, the plaintiff consented to an exploratory, conservative operation to burn adhesions which had entangled her reproductive organs. Instead the surgeon performed a total hysterectomy. The Supreme Court found the additional procedure improper even though the hysterectomy was reasonably necessary at the time of surgery. Notwithstanding the fact that the plaintiff's condition in *Pizzalotto* had already rendered her sterile and that she would have to undergo a hysterectomy within six to eight days in order to avoid danger to her health, the Court nevertheless determined that the performance of a hysterectomy without consent constituted a

battery.[1]

In the present case, the performance of the colonoscopy cannot be said to have been an emergency procedure. Dr. Murdock had already successfully completed the hemorrhoidectomy when he decided to perform the colonoscopy. The reason for the colonoscopy was to reduce the possibility of colon cancer in the future. There was no immediate threat to the health of Plaintiff that required the immediate performance of the colonoscopy. The court in *Pizzalotto* found even though the patient there would require a hysterectomy within six to eight days in order to avoid danger to her health, it was not an emergency which warranted the performance of a hysterectomy without consent. Dr. Murdock's belief that a colonoscopy would benefit Plaintiff does not, under *Pizzalotto*, legally justify its performance without the patient's consent.

Defendants also note a plaintiff in an informed consent case bears the burden

_____

[1] Subsequent to the decision in *Pizzalotto*, there was an amendment to LSA-R.S. 40:1299.40 in 1990, which melded together the concepts of battery and negligent failure to obtain informed consent. Thus, the sole cause of action provided by the legislature for both allegations thereafter sounded only in negligence, signifying a recognition of the absence of intentional conduct in both factual situations. *See Lugenbuhl v. Dowling*, 96-1575, p. 9 (La.10/10/97), 701 So.2d 447, 453 ("We therefore reject battery-based liability in lack of informed consent cases (*which include no-consent cases*) in favor of liability based on breach of the doctor's duty to provide the patient with material information concerning the medical procedure." (Emphasis supplied.)) The 1990 amendment added Section E to the statute which provides in pertinent part:

> In a suit against a physician or other health care provider involving a health care liability or medical malpractice claim which is based on the failure of the physician or other health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or other health care provider, *the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.* (Emphasis added).

of proving disclosure of the material risks would have led a reasonable patient in the plaintiff's position to reject the medical procedure or choose a different course of treatment. *Fremin v. Continental Ins. Co.*, 02-1157 (La.App. 3 Cir. 3/5/03), 839 So.2d 1137, *writs denied*, 03-966, 03-979, 03-981 (La. 6/27/03), 847 So.2d 1271, 1272. Defendants argue applying this standard in a light most favorable to Plaintiff, we must conclude that a reasonable person with a family history of colon cancer and a father who was diagnosed with colon cancer would not refuse a colonoscopy even when faced with the known risk that his colon might be perforated. While this eventuality may very well be true, it is only one part of the "choice" inquiry in securing informed consent. In deciding whether to undergo a colonoscopy, Plaintiff was entitled to select a physician he believed possessed greater specialized skills to perform the surgery. We find nothing *unreasonable* about a patient desiring the best and most competent medical treatment available and exercising complete control over his choice of physician in a non-emergency situation. La.R.S. 9:2794(A)(1) provides that general practitioners are held to the degree of knowledge or skill possessed by other general practitioners in a similar community or locale and under similar circumstances; whereas specialists are held to the degree of care ordinarily practiced within the involved medical specialty. Clearly the law has acknowledged that specialists are in a superior position within their field than that of a general practitioner.

After a thorough examination of the law and jurisprudence, we find a favorable inference can be drawn that the risk of a perforated colon was substantial enough that a reasonable patient in Plaintiff's position would have been likely to attach significance to the risks in deciding not only whether to undergo the procedure, but when and whether to secure the services of a surgeon possessing particular skills and

-11-

specializing in the area of gastroenterology to perform the procedure. At the summary judgment stage the burden is upon the Defendants, as the moving party, not upon Plaintiff, to show the patient was adequately informed of the nature and magnitude of the risk so as to be able to make an intelligent choice. There was no emergency. No written consent listing the material risks of a colonoscopy was obtained. There are, at a minimum, genuine issues of fact whether Dr. Murdock engaged Plaintiff in a discussion of the risks associated with a colonoscopy or allow an opportunity for Plaintiff to ask questions as required by La.R.S. 40:1299.40(C). To be valid, actual consent requires an understanding as set forth in La.R.S. 40:1299.40(C). Under these circumstances, it cannot be said that Dr. Murdock carried his burden of proof. Plaintiff is entitled to his day in court.

## DECREE

For the above reasons, the judgment below granting the summary judgment is reversed and the case is remanded to the trial court for further proceedings. Costs of this appeal are assessed to defendants-appellees.

**REVERSED AND REMANDED.**

NUMBER 08-1508

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JOHN MAYBRIER

VERSUS

LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY, ET AL.

AMY, J., concurring in the result.

I agree that a reversal of the summary judgment is appropriate. I write separately as I believe that the motion for summary judgment advanced a straightforward question, i.e., whether the plaintiff may proceed with this lack of informed consent case due to his statement that he would have undergone a colonoscopy if informed of the risks, but that he would have had it performed by another physician. On this narrow issue presented, I find the defendants' submission in support of their motion legally insufficient.

La.R.S. 40:1299.40(E)(2)(a) provides that:

> In a suit against a physician or other health care provider involving a health care liability or medical malpractice claim which is based on the failure of the physician or other health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or other health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

The defendants assert that the plaintiff is precluded from establishing the causation element of his case due to *Livings v. LaNasa*, 552 So.2d 1281 (La.App. 5 Cir. 1989), a case rendered prior to the enactment of La.R.S. 40:1299.40(E)(2)(a) and one distinguished at some length by the majority. I do not distinguish *Livings* from this case. In fact, one of the deficiencies I find in the motion for summary judgment application is the thin factual background provided by the record. Instead, my

understanding of the causation element of the plaintiff's burden of proof is at odds with the defendants' argument regarding the persuasiveness of *Livings*. The defendants' argument and the *Livings* case focus on the plaintiff's choice. However, the causation inquiry involves what *a reasonable person* would have done.

The Louisiana Supreme Court explained in *Lugenbuhl v. Dowling*, 96-1575, p. 12 (La. 10/10/97), 701 So.2d 447, 454, that:

> Causation is established only if adequate disclosure *reasonably would be expected to have caused a reasonable person to decline treatment because of the disclosure of the risk or danger that resulted in the injury*. Although the patient has the absolute right, for whatever reason, to prevent unauthorized intrusions and treatments, he or she can only recover damages for those intrusions in which consent would have been reasonably withheld if the patient had been adequately informed.

(Emphasis added.) *See also Jackson v. State*, 05-2021 (La. 9/29/06), 938 So.2d 688. Thus, it seems to me that the choice the *plaintiff* would have made if faced with the material risks of a colonoscopy does not, alone and as a matter of law, preclude the recovery for lack of informed consent. Rather, the inquiry is on what a reasonable person would have done.

The defendants, in their brief to this court, reference facts and figures regarding the wisdom of a patient having a colonoscopy performed. However, the evidence in this regard was submitted in support of the defendants' first motion for summary judgment which was denied by the trial court. The defendants have not answered this appeal, placing review of this first motion for summary judgment at issue. Moreover, even if considered, I do not see that this evidence on this point is sufficient to sustain the initial burden of proof under La.Code Civ.P. art. 966(C)(2) of "point[ing] out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense."

I further refrain from joining the majority's discussion regarding the

2

reasonableness of the plaintiff's preference of a gastroenterologist instead of a general surgeon.  This type of inquiry would necessarily require some evidence that either specialization had a higher level of expertise for this procedure.  The record before us, however, does not include evidence as to the scope of the expertise of either type of physician.

For these reasons, I concur in the result.