STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-463

MICHAEL LABIT AND CHRISTINE LABIT

VERSUS

DR. JOHN E. COBB AND DR. DANIEL J. CARROLL

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2009-3811-D
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.

AFFIRMED.

J. Lomax Jordan, Jr.
1817 West University Avenue
Lafayette, Louisiana 70506
(337) 233-9984
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Michael Labit and Christine Labit

**Marc W. Judice**
**H. L. Tuten III**
**Judice & Adley (A Professional Law Corporation)**
**926 Coolidge Boulevard**
**Post Office Box 51769**
**Lafayette, Louisiana 70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Dr. John E. Cobb and Dr. Daniel J. Carroll**

**GENOVESE, Judge.**

In this medical malpractice case, Plaintiffs, Michael Labit and Christine Labit,[1] appeal the trial court's grant of summary judgment in favor of Defendants, Dr. John E. Cobb and Dr. Daniel J. Carroll, dismissing Plaintiffs' claims. For the following reasons, we affirm.

## FACTS

Mr. Labit first saw Dr. Cobb for an evaluation of his back pain on May 12, 2004, pursuant to referral from Dr. Roland Miller. Dr. Cobb noted that an April 27, 2004 MRI revealed a degenerative disc at L4-5 with protrusion. Dr. Cobb recommended that Mr. Labit undergo an anterior lumbar interbody fusion. On July 9, 2004, Mr. Labit signed a consent form for this procedure at Dr. Cobb's office. On July 14, 2004, Mr. Labit saw Dr. Carroll for a pre-operative visit. Dr. Carroll was the general surgeon who was to assist Dr. Cobb with the surgery. At this pre-operative visit, Mr. Labit signed a consent form at Dr. Carroll's office.

Surgery was performed by Drs. Cobb and Carroll on July 15, 2004, at Lafayette Surgical Specialty Hospital in Lafayette, Louisiana. Due to damage to a blood vessel that occurred during the surgery, Mr. Labit incurred significant blood loss, suffered cardiac arrest, and had to be resuscitated. Following the surgery, he was transferred to The Heart Hospital of Lafayette for cardiac monitoring. An ultrasound later revealed that Mr. Labit experienced a post-operative, left lower extremity, deep venous thrombosis ("DVT").

On July 13, 2007, Mr. Labit filed a complaint with the Louisiana Patient's Compensation Fund, and a medical review panel (MRP) was convened. In an opinion

---

[1]Mrs. Labit has asserted a claim for loss of consortium. Given the derivative nature of her claim, for purposes of this opinion, we will collectively refer to the Plaintiffs' claims as those of Mr. Labit.

rendered March 5, 2009, the MRP reached the following unanimous opinion:

> The evidence does not support the conclusion that either of the defendants, Dr. John E. Cobb or Dr. Daniel J. Carroll, failed to meet the applicable standard of care as charged in the complaint.

This opinion is based upon the following:

> Appropriate consent was obtained for this procedure, which consent included the risk of bleeding and damage to blood vessels. Bleeding and injury to the vena cava is a recognized complication of this procedure. The complication was recognized[,] and the patient was treated appropriately. There was no cardiorespiratory arrest and no progressive respiratory arrest, as evidenced by the anesthesia record.

On June 24, 2009, Mr. Labit filed the instant medical malpractice action, alleging negligence on the part of Drs. Cobb and Carroll in performing the surgery and the failure of the doctors to disclose and/or adequately disclose the potential complications associated with the surgical procedure, namely, DVT. On September 8, 2009, Drs. Cobb and Carroll filed a Motion for Summary Judgment on the issues of breach of the applicable standard of care and informed consent. The matter was heard on December 7, 2009, and the trial court signed a judgment on December 22, 2009, granting summary judgment in favor of Drs. Cobb and Carroll, dismissing Mr. Labit's claims. Mr. Labit appeals.[2]

## ISSUE

The overall issue presented by Mr. Labit for our review is whether Drs. Cobb and Carroll obtained Mr. Labit's informed consent by providing adequate disclosure of the material risks associated with his surgical procedure.

---

[2]We note that although the Motion for Summary Judgment raised both the issues of breach of the standard of care and informed consent, the only issue presented in this appeal is that of informed consent.

## LAW AND DISCUSSION

In the instant case, Mr. Labit asserts that DVT is a significant risk associated with an anterior lumbar interbody fusion, that this risk was well known to Drs. Cobb and Carroll, and that it was required to have been disclosed to him. Louisiana Revised Statutes 40:1299.40 governs the consent that must be obtained from a patient before a medical procedure is rendered. That statute provides, in relevant part, as follows:

> A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means the voluntary permission of a patient, through signature, marking, or affirmative action through electronic means pursuant to R.S. 40:1299.40.1, to any medical or surgical procedure or course of procedures which sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is evidenced by a signature, marking, or affirmative action through electronic means, by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent, by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.

> . . . .

> E. (1) As used in this Subsection, "secretary" means the secretary of the Department of Health and Hospitals.

> (2)(a) In a suit against a physician or other health care provider involving a health care liability or medical malpractice claim which is based on the failure of the physician or other health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or other health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

3

(b) Consent to medical treatment may be evidenced according to the provisions of Subsections A and C of this Section or, as an alternative, a physician or other health care provider may choose to avail himself of the lists established by the secretary pursuant to the provisions of this Subsection as another method by which to evidence a patient's consent to medical treatment.

La.R.S. 40:1299.40.

In the instant matter, it is undisputed that Mr. Labit executed a consent form at Dr. Cobb's office, and a second consent form at Dr. Carroll's office. What is disputed, however, is whether the consent forms adequately disclosed the risk of DVT.

**July 9, 2004 Consent Form - Dr. Cobb**

The consent form signed by Mr. Labit on July 9, 2004, at Dr. Cobb's office, contains the following language:

Risks generally associated with any surgical treatment/procedure, including anesthesia are: death, brain damage, disfiguring scars, quadriplegia (paralysis from neck down), paraplegia (paralysis from waist down), the loss or loss of function of any organ or limb, infection, bleeding, and pain.

An attachment to the above, also signed by Mr. Labit, lists several additional risks associated with spinal operations including, but not limited to:

1. Pain, numbness or paralysis, or clumsiness.
2. Weakness of arms(s), hand(s), leg(s) or foot (feet) including paraplegia (paralysis of both arms or paralysis of both legs) and quadraplegia (paralysis of all four extremities).

. . . .

7. Injury to major blood vessels.

. . . .

9. Failure to relieve pain or increase in pain.

. . . .

4

13. Blood clots in legs which might break off and go to lungs resulting in breathing problems, possibly death.

Additionally, the consent form contains a page entitled "**ACKNOWLEDGMENT AUTHORIZATION AND CONSENT**" containing, in relevant part, the following language:

(c) **Particular Concerns:** I have had an opportunity to disclose to and discuss with the physician providing such information, those risks or other potential consequences of the medical treatment or surgical procedure that are of particular concern to me.

(d) **Questions:** I have had an opportunity to ask, and I have asked, any questions I may have about the information in this document and any other questions I have about the proposed treatment or procedure, and all such questions were answered in a satisfactory manner.

Finally, just above the patient's signature line containing Mr. Labit's signature, the following language appears:

I have read and understand all information set forth in this document and all blanks were filled in prior to my signing. This authorization for and consent to medical treatment or surgical procedure is and shall remain valid until revoked.

I acknowledge that I have had the opportunity to ask questions about the contemplated medical procedure or surgical procedure described in item 2 of this consent form, including risks and alternatives, and acknowledge that my questions have been answered to my satisfaction.

**July 14, 2004 Consent Form - Dr. Carroll**

The consent form signed by Mr. Labit at Dr. Carroll's office is virtually identical to the consent form that was signed by Mr. Labit at Dr. Cobb's office with the exception of additional risks that were inserted by hand. The additional risks inserted by hand include "infection, bleeding, hematoma formation, hernia in incision, injury to nerves, bowel, ureter."

**Burden of Proof**

A plaintiff's burden of proof in a medical malpractice action, based upon a

5

healthcare provider's alleged failure to disclose or inadequate disclosure of a significant risk associated with a surgical procedure, has been summarized by this court as follows:

> As in a case alleging breach of the medical standard of care, the plaintiff in an informed consent case bears the burden of proof. He must show: (1) the existence of a material risk which the physician must disclose; (2) the failure of the physician to inform the patient of a material risk; (3) the realization of the material risk; and (4) a causal connection between the failure to inform the patient of the risk and realization of the risk. *Hondroulis v. Schuhmacher*, 612 So.2d 859 (La.App. 4 Cir.1992) (*citing Hondroulis v. Schuhmacher*, 553 So.2d 398 (La.1988)); *Leger* [*v. La. Med. Mut. Ins. Co.*, 98-1098 (La.App. 3 Cir. 3/31/99)], 732 So.2d 654[, *writ denied*, 99-1253 (La. 6/18/99), 745 So.2d 30]; *Ardoin v. Murdock*, 97-1468 (La.App. 3 Cir. 4/15/98), 711 So.2d 837, *writ denied*, 98-1362 (La. 7/2/98), 724 So.2d 734; *Guidry v. Neu*, 97-810 (La.App. 3 Cir. 12/10/97), 708 So.2d 740.

*Maybrier v. La. Med. Mut. Ins. Co.*, 08-1508, p. 4 (La.App. 3 Cir. 6/10/09), 12 So.3d 1115, 1119, *writ denied*, 09-1558 (La. 10/9/09), 18 So.3d 1287.

**Summary Judgment**

This court recently discussed the standard of review to be employed by an appellate court when reviewing a motion for summary [judgment] filed in a medical malpractice case:

> A motion for summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria as the trial court to determine whether summary judgment is appropriate; whether there is a genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. A motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Louisiana Code of Civil Procedure Article 966(C)(2) provides:
>
>> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that

is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

*Wofford v. Dunnick*, 09-1309, pp. 3-4 (La.App. 3 Cir. 4/14/10), 36 So.3d 370, 373-74 (quoting *Djorghi v. Glass*, 09-461, p. 2 (La.App. 3 Cir. 11/4/09), 23 So.3d 996, 998, *writ denied*, 09-2614 (La. 2/5/10), 27 So.3d 306).

Drs. Cobb and Carroll bear the burden of proof of their entitlement to summary judgment. They do not bear the burden of proof at trial on the issue of informed consent. They are not required to negate all essential elements of Mr. Labit's claims; rather, they must simply show an absence of factual support for one or more elements essential to Mr. Labit's claim. See La.Code Civ.P. art. 966(C)(2). If they are successful in doing so, the burden then shifts to Mr. Labit to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. *Id.*

Having reviewed the entire record of these proceedings, we find an absence of factual support essential to Mr. Labit's claim of lack of informed consent. Therefore, Drs. Cobb and Carroll are entitled to summary judgment as a matter of law. Specifically, based upon the evidence of these proceedings, we find that Mr. Labit is unable to establish a failure of these healthcare providers to inform him of the risk of DVT associated with the surgical procedure.

7

Examining the consent forms executed by Mr. Labit, we find that both of these forms are in compliance with the express provisions of La.R.S. 40:1299.40(A)(1). As required by the statute, the consent forms "set[] forth in general terms the nature and purpose of the procedure." *Id.* Additionally, "the known risks" contained within the statute are listed on the forms, along with additional risks that are identified in laymen's terms. *Id.* The forms also contain the requisite language that the patient "acknowledges that such disclosure of information has been made and that all questions asked about the procedure . . . have been answered in a satisfactory manner[,]" which disclosure "is evidenced by a signature . . . by the patient for whom the procedure is to be performed." *Id.* Given that the consent forms of Drs. Cobb and Carroll are in compliance with La.R.S. 40:1299.40(A)(1), the legal presumption arises that the consent obtained from Mr. Labit is "valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts." *Id.*

Our Louisiana Supreme Court expounded on this rebuttable legal presumption in the often cited case of *Hondroulis*, 553 So.2d 398, 417 (emphasis added) as follows:

> In our opinion, under the statute, (1) if it is proved that the patient signed a document purporting to warn him of a risk involved in the proposed surgery or treatment, (2) it is presumed that the patient understood and consented to encounter whatever risk a reasonable person, in what the doctor knew or should have known to be the patient's position, would have apprehended from the written consent form, and (3) *the patient cannot disprove the presumed fact except by showing that his consent was induced by misrepresentation*.

In opposition to the Motion for Summary Judgment in the instant matter, although Mr. Labit maintains that he was not told of the risk of DVT, the consent forms do expressly identify the risk of bleeding, blood clots, and injury to a major

8

blood vessel as being risks associated with the surgery. Additionally, while Mr. Labit contends that Drs. Cobb and Carroll failed to adequately explain the surgical procedure and the risks thereof, his signature on the consent forms, whereby he acknowledges that all of his questions were answered to his satisfaction, is contrary to this assertion. Moreover, Mr. Labit did not produce any evidence of misrepresentation on the part of the health care providers. Thus, he has failed to rebut the legal presumption that his consent to the surgical procedure is valid and effective. La.R.S. 40:1299.40; *Hondroulis*, 553 So.2d 398.

In addition to the consent forms themselves, Drs. Cobb and Carroll introduced the opinion of the MRP in support of their Motion for Summary Judgment. As quoted above, the MRP unanimously concluded that the "[a]ppropriate consent was obtained for this procedure, which consent included the risk of bleeding and damage to blood vessels."

Based upon the foregoing, we find that Drs. Cobb and Carroll successfully met their burden of showing an absence of factual support on an essential element of Mr. Labit's claim of lack of informed consent, i.e., the failure of the physicians to inform the patient of a material risk. Therefore, to preclude the grant of summary judgment, the burden then shifted to Mr. Labit "to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial[.]" La.Code Civ.P. art. 966(C)(2).

The evidence introduced by Mr. Labit in opposition to the Motion for Summary Judgment includes his own affidavit, excerpts of medical records, excerpts of the depositions of Drs. Cobb and Carroll, an affidavit of Dr. James P. Elmes, and a medical journal article entitled *Methods and Complications of Anterior Exposure of*

9

*the Thoracic Spine.* Although Mr. Labit strenuously argues that this evidence supports his contentions that DVT is a known risk associated with the surgery and that he developed DVT as a result of the surgical procedure, this evidence is legally insufficient to establish that he will be able to satisfy his burden of proving the elements of his lack of informed consent case at trial.

The affidavit of Dr. Elmes, a board certified orthopedic surgeon, states in part as follows:

> "It is my expert medical opinion that on or about July 15, 2004, Michael C. Labit underwent an *Anterior Lumbar Discectomy*, and experienced a left lower extremity deep venous thrombosis (DVT) secondary to that procedure. A DVT in a lower extremity can cause circulatory deficits, increased pain, and swelling of the leg. Based upon my education and experience, and upon studies and research of which I am aware, it is my opinion that DVT occurs in one to five (1-5%) percent of the cases where an anterior lumbar discectomy is performed. DVT is a significant and material risk that occurs when this procedure is performed on a patient."

Although Mr. Labit relies on the expert opinion of Dr. Elmes, we find that a reading of the affidavit reveals no attestation by this expert "that Dr. Cobb and/or Dr. Carroll failed to disclose deep vein thrombosis or that the consent forms used by Dr. Cobb and/or Dr. Carroll were deficient in any way." In fact, neither this affidavit, nor any evidence introduced by Mr. Labit, establishes "the failure of the physician[s] to inform the patient of a material risk[.]" *Maybrier*, 12 So.3d at 1119.

Because we have found that Mr. Labit is unable to meet his evidentiary burden at trial that Drs. Cobb and/or Carroll failed to disclose a material risk associated with the surgical procedure, we pretermit any discussion of the remaining elements of Mr. Labit's claim. Without sufficient evidence produced by Mr. Labit to establish that he will be able to prove his claim at trial, no genuine issue of material fact remains; thus, the Motion for Summary Judgment on behalf of Drs. Cobb and Carroll was

properly granted.

## **DECREE**

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Dr. John E. Cobb and Dr. Daniel J. Carroll is affirmed. Costs of this appeal are assessed to Michael Labit and Christine Labit.

**AFFIRMED.**

11